IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

MOHAMED ALI FAYYAZI,                *

    Plaintiff,                          *

        v.                              *       CIVIL NO.: WDQ-11-3066

JANET NAPOLITANO,                   *
SECRETARY OF HOMELAND
SECURITY, et al.,                   *

    Defendants.                         *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Mohamed Ali Fayyazi sued Janet Napolitano, Secretary of the U.S. Department of Homeland Security ("DHS") and others[1] (collectively, the "Defendants"), for a writ of mandamus. Pending is the Defendants' motion to dismiss.[2] No hearing is

---

[1] Alejandro Mayorkas, Director of U.S. Citizenship and Immigration Services ("USCIS"), and F. Gerard Heinauer, Acting Director of the USCIS Nebraska Service Center.  ECF No. 1.
    Mark J. Hazuda is the current Director of the USCIS Nebraska Service Center, and will be substituted as the appropriate named defendant.  See Fed. R. Civ. P. 25(d).

[2] The Defendants captioned the motion as a motion to dismiss or, in the alternative, for summary judgment.  ECF No. 10.  The motion will be treated as a motion to dismiss; the Court will consider the pleadings, matters of public record, and documents attached to the motion that are integral to the complaint and whose authenticity is not disputed.  See *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (in determining whether it has jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment").

necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the Defendants' motion will be granted.

I.  Background[3]

Fayyazi, a native and citizen of Afghanistan, entered the United States as a refugee[4] on March 15, 2001. Compl. ¶¶ 1, 3, 12. On April 8, 2002, Fayyazi filed an I-485 ("green card") Application to Adjust to Permanent Resident Status with the USCIS Nebraska Service Center. *Id.* ¶ 13; ECF No. 1-3.[5] On his

---

[3] For the Defendants' motion to dismiss, the well-pled allegations in Fayyazi's complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).

[4] Fayyazi was admitted "indefinitely" under § 207 of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1157. ECF No. 1-9 at 2.

[5] Under INA § 209, every refugee entrant must apply for permanent residency one year after entry. 8 U.S.C. § 1159(a)(1); 8 C.F.R. § 209.1(b). To be eligible for adjustment of status, a refugee must: (1) apply for an adjustment, (2) have been physically present in the United States for at least one year; (3) continue to be a refugee; (4) not be "firmly resettled" in a foreign country; and (5) be "admissible" as an immigrant at the time of examination. 8 U.S.C. § 1159(b).
Admissibility is determined by the Secretary of DHS or the U.S. Attorney General. 8 U.S.C. § 1159(b); 8 C.F.R. § 209.1(a)(1). Under INA § 212, any alien who is a member of an undesignated ("Tier III") terrorist organization, or has engaged in a terrorist activity, is inadmissible and thus "ineligible to receive [a] visa[]." 8 U.S.C. § 1182(a); *id.* § 1182(a)(3)(B)(i)(I), (VI). A Tier III terrorist organization is "a group of two or more individuals . . . which engages in [terrorist activities as defined by 8 U.S.C. § 1182(a)(3)(B)(iv)(I-VI).]" 8 U.S.C. § 1182(a)(3)(B)(vi)(III). "Engaging" in terrorist activities includes providing "material support" to Tier III organizations. *Id.* § 1182(a)(3)(B)(iv)(VI)(dd).
The Secretary of DHS is authorized to "exempt certain terrorist-related inadmissibility grounds," ECF No. 10-1 ¶ 18,

application, Fayyazi indicated that he had been a member of the Hezb-e Wahdat Party from 1990 to 1998. ECF No. 10-1 ¶ 9.[6] On April 29, 2002, USCIS sent Fayyazi a notice of receipt and indicated that "[i]t usually takes 300 to 330 days from the date of this receipt for us to process this type of case." ECF No. 1-3.

Between 2005 and 2008, Fayyazi repeatedly inquired about the status of his application to USCIS, the office of U.S. Senator Benjamin Cardin, then-President George W. Bush, and the office of the Citizenship and Immigration Services Ombudsman.

---

including those contained in subsection (a)(3)(B)(iv)(VI) (providing material support to a terrorist organization). 8 U.S.C. § 1182(d)(3)(B)(i). Such exemption is committed to the Secretary's "sole unreviewable discretion." *Id.* Implementing this provision, USCIS has issued several memoranda indicating its policy to hold adjudication of applications that "could benefit from" future exercises of the Secretary's discretionary exemption authority. *See, e.g.*, ECF No. 10-2. Between mid-2006 and November 30, 2011, USCIS granted 14,064 exemptions in cases involving terrorist-related inadmissibility grounds. ECF No. 10-1 ¶ 30. *See generally id.* ¶¶ 19-20, 22-27 (indicating past exercises of the exemption authority and stating that none applies to Fayyazi). USCIS "continuously updates its country conditions and specific group research, and analyzes whether cases on hold due to affiliations with certain groups may be released entirely or partially." *Id.* ¶ 31.

[6] Hezb-e Wahdat grew out of an alliance among nine Afghan Shia Mujahideen groups based in Teheran. ECF No. 10-1 ¶ 10. After Afghanistan's government collapsed in 1992, Hezb-e Wahdat attacked interim government forces. *Id.* ¶ 11. The group also engaged in an armed struggle to overthrow the Taliban in 1997 and 1998. *Id.* ¶ 12. In October 2001, Human Rights Watch cited Hezb-e Wahdat for "serious human rights abuses" in late 1999 and early 2000. *Id.* ¶ 13 (internal quotation marks omitted).

Compl. ¶¶ 15-19.[7]  USCIS initially responded that Fayyazi's application was delayed because of requisite security checks, background investigation, and unfinished "name check" clearance by the Federal Bureau of Investigation (the "FBI").  Id. ¶¶ 15-19.[8]  On December 31, 2008, USCIS denied Fayyazi's request for expedited processing.  Id. ¶ 19; ECF No. 1-5 at 15.[9]

On September 13, 2010, after further inquiries by Fayyazi, USCIS informed him that his case was on "hold."  Compl. ¶ 19.  USCIS explained that Fayyazi "appear[ed] to be inadmissible under section 212(a)(3)(B)[10] of the Immigration and Nationality Act" (the "INA") for past participation in Hezb-e Wahdat, a Tier

---

[7] Fayyazi also requested information about his case under the Freedom of Information Act, 5 U.S.C. § 552.  See ECF No. 1-5 at 8-9.

[8] When an applicant applies for adjustment of status, USCIS conducts security and background checks to "ensure that the applicant is eligible for the immigration benefit and that he or she is not a risk to national security."  ECF No. 10-1 ¶ 5.  Applications are "check[ed] against" DHS's immigration systems, the DHS-managed Interagency Border Inspection System, and FBI databases.  Id. ¶ 6.
   A "name check" is a "computerized search of an applicant's name against FBI investigative databases."  Kashkool v. Chertoff, 553 F. Supp. 2d 1131, 1133 (D. Ariz. 2008).  Fayyazi's name check request was submitted to the FBI on February 9, 2004.  ECF No. 10-1 ¶ 7.  The FBI completed the name check on February 19, 2008.  Id.  Notice of the completed name check was uploaded to USCIS's system on February 28, 2008.  Id.

[9] Fayyazi was required to appear at least five times to renew his fingerprint card (on file with USCIS).  Compl. ¶ 14.  See generally ECF No. 1-4.

[10] 8 U.S.C. § 1182(a)(3)(B).

III terrorist organization. ECF No. 1-5 at 10; ECF No. 10-1 ¶¶ 11, 14-15.[11] USCIS assured Fayyazi that it would "make every effort" to decide his case "as soon as the review is completed." ECF No. 1-5 at 10. In February 3 and June 7, 2011 emails to Senator Cardin's office, USCIS confirmed its decision to hold Fayyazi's application. *Id.* at 2-3, 6-7. According to the Defendants, if Fayyazi's application were adjudicated today, the application would "likely" be denied on "terrorism-related inadmissibility grounds." ECF No. 10 at 5; ECF No. 10-1 ¶ 29.

On October 26, 2011, Fayyazi filed this suit for a writ of mandamus compelling USCIS to adjudicate his application for adjustment of status within 15 days. ECF No. 1.[12] On March 30, 2012, the Defendants timely moved to dismiss or, alternatively, for summary judgment, under Fed. R. Civ. P. 12(b)(6) and 56. ECF No. 10; *see* ECF No. 8. On April 16, 2012, Fayyazi opposed the Defendants' motion. ECF No. 11. On May 3, 2012, the Defendants replied. ECF No. 12.

---

[11] *See supra* notes 5-6 and accompanying text.

[12] Fayyazi also seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, "and/or other appropriate authority." ECF No. 1 at 8. Finally, he asks that the Court grant "such other and further relief as maybe [sic] be appropriate." *Id.*

II. Analysis

   A. Standards of Review

   Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

   "[A] claim under the Declaratory Judgment Act, even if made, does not confer jurisdiction." *Interstate Petrol. Corp. v. Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (citing *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950)). The declaratory judgment plaintiff must establish federal jurisdiction by alleging either a federal claim against the defendant, or that there would be federal question jurisdiction over a claim the defendant could bring against the plaintiff. *Columbia Gas Transmission Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001).[13]

---

[13] Lack of jurisdiction over the declaratory judgment defendant's claim does not end the court's inquiry. *United States v. Penn. Dep't of Envtl. Res.*, 923 F.2d 1071, 1073 (3d Cir. 1991) (district court abused its discretion by dismissing declaratory

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

judgment suit when the district court had original jurisdiction over the civil action commenced by the United States--although the district court had previously remanded the underlying dispute because it did not arise under federal law).

(2009) (quoting *Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B. The Defendants' Motion

1. Subject Matter Jurisdiction

Fayyazi asserts that the Court has subject matter jurisdiction under federal question jurisdiction,[14] the Declaratory Judgment Act,[15] the Mandamus Act,[16] and the Administrative Procedure Act.[17] Compl. ¶ 7. The Defendants do not challenge the Court's jurisdiction. *See generally* ECF No. 10. "Subject-matter jurisdiction can never be waived or forfeited." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012). The Court will therefore consider its adjudicative authority *sua sponte*. *See id.* In so doing, the Court recognizes the "strong presumption" in favor of judicial review of administrative action. *INS v. St. Cyr*, 533 U.S. 289, 298 (2001).

---

[14] 28 U.S.C. § 1331.

[15] 28 U.S.C. §§ 2201, *et seq.*

[16] 28 U.S.C. § 1361.

[17] 5 U.S.C. §§ 701, *et seq.*

2. The Immigration and Nationality Act

Fayyazi filed an I-485 application to obtain status as a permanent resident under INA § 209, which requires that every refugee file such application one year after entry into the United States. 8 U.S.C. § 1159(a)(1); 8 C.F.R. § 209.1(b); Compl. ¶ 13. The statute authorizes the Secretary of DHS or the Attorney General, "in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe," to adjust to permanent resident status any alien granted asylum who:

(1) applies for such adjustment,
(2) has been physically present in the United States for at least one year after being granted asylum,
(3) continues to be a refugee . . . or a spouse or child of such a refugee,
(4) is not firmly resettled in any foreign country, and
(5) is admissible . . . as an immigrant under this Act at the time of examination for adjustment of such alien. . . .

8 U.S.C. § 1159(b).

Grounds for inadmissibility include membership in--and provision of material support to--a Tier III terrorist organization. See *supra* note 5. However, under INA § 212(d)(3)(B)(i), the Secretary of DHS, "after consultation with the Secretary of State and the Attorney General," may exercise her "sole unreviewable discretion" to exempt an alien or group from inadmissibility on these grounds. 8 U.S.C. § 1182(d)(3)

(B)(i). USCIS's written policy is to "hold" adjudication of applications that "could benefit from" a future exercise of such exemption authority. *See, e.g.*, ECF No. 10-2. The Secretary's decision to exempt--or to revoke exemption--is unreviewable.[18]

The INA's divestment of subject matter jurisdiction applies to more than the final exemption decision. Under INA § 242(a)(2)(B)(ii), "no court shall have jurisdiction to review" any "decision *or action* of the Attorney General or the Secretary of [DHS] the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of [DHS]." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).[19] "There is no doubt that the adjustment of status application process [is] within subsection (ii)"[20]: INA § 209 provides that the Secretary of DHS, or the Attorney General, has the discretion to adjust a refugee alien's status, "under such regulations" as she may prescribe. 8 U.S.C. § 1159(b).

---

[18] *See* 8 U.S.C. § 1182(d)(3)(B)(i) ("Notwithstanding any other provision of law (statutory or nonstatutory), including . . . sections 1361 and 1651 of Title 28, no court shall have jurisdiction to review such a determination or revocation.").

[19] INA § 242 generally addresses judicial review of final orders of removal. 8 U.S.C. § 1252. However, the Fourth Circuit has held that the jurisdictional limitations "imposed by" that section also apply to "review of agency decisions made outside of the removal context." *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 619 (4th Cir. 2010).

[20] *See Safadi v. Howard*, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006).

Similarly, the decision to exempt an alien from otherwise-applicable grounds for inadmissibility is committed to the Secretary's "sole unreviewable discretion," after consultation with the Secretary of State and Attorney General.  8 U.S.C. § 1182(d)(3)(B)(i).

Federal courts are "split" on whether the *pace* at which an I-485 application is processed is a discretionary "action," so that judicial review thereof is statutorily precluded.[21]  This Court, and several others, have held that it is.[22]  In the absence of controlling authority to the contrary, the Court holds that INA § 242(a)(2)(B)(ii) divests it of jurisdiction to

---

[21] *Goumilevski v. Chertoff*, No. DKC 2006-3247, 2007 U.S. Dist. LEXIS 59858, at *7 (D. Md. July 27, 2007); *see also Safadi*, 466 F. Supp. 2d at 698.

[22] *See, e.g., Chaudry v. Chertoff*, No. WDQ-08-0595, slip op. at 4-6 (D. Md. Aug. 29, 2008); *Cai v. Gonzales*, No. AW-07-1702, slip op. at 5-7 (D. Md. July 14, 2008); *Wang v. Chertoff*, No. DKC 2007-0281, slip op. at 5-8 (D. Md. Mar. 28, 2008); *Goumilevski*, 2007 U.S. Dist. LEXIS 59858, at *7-11; *see also, e.g., Alghadbawi v. Napolitano*, No. 1:10-cv-1330-TWP-DKL, 2011 WL 4390084, at *3-4 (S.D. Ind. Sept. 19, 2011); *Ma v. Rice*, Nos. 08-CV-14008, 08-CV-14009, 2009 WL 160288, at *5-7 (E.D. Mich. Jan. 22, 2009); *Yu v. Chertoff*, No. 07cv0296, 2008 WL 413269, at *4 (S.D. Cal. Feb. 12, 2008); *Luo v. Keisler*, 521 F. Supp. 2d 72, 74 (D.D.C. 2007); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1352 (S.D. Fla. 2007); *Safadi*, 466 F. Supp. 2d at 698.
   Other courts have disagreed.  *See, e.g., Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *2 (N.D. Cal. June 28, 2012); *Tewolde v. Wiles*, No. C11-1077JLR, 2012 WL 750542, at *3 (W.D. Wash. Mar. 7, 2012); *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1136-39 (D. Ariz. 2008); *Sawad v. Frazier*, No. 07-1721, 2007 WL 2973833, at *2 (D. Minn. Oct. 9, 2007); *Liu v. Chertoff*, No. CV-06-1682-ST, 2007 WL 2435157, at *5-8 (D. Or. Aug. 29, 2007); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 152-54 (D. Mass. 2007).

set a deadline by which USCIS must decide Fayyazi's application.[23]

### III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss will be granted.

\_\_\_\_10/22/12\_\_\_\_  \_\_\_\_\_/s/\_\_\_\_\_
Date                           William D. Quarles, Jr.
                               United States District Judge

---

[23] There is authority that an agency's "inordinate" delay in reviewing an I-485 application can, at some point, become a nondiscretionary "failure to adjudicate." *Cai*, slip op. at 7 n.3. The record does not reflect such a delay.
In further support of jurisdiction, Fayyazi cites federal question jurisdiction, 28 U.S.C. § 1331; the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* Compl. ¶ 7. Because INA § 242(a)(2)(B)(ii) specifically precludes judicial review under other statutes, the cited provisions do not establish jurisdiction over Fayyazi's action. *See* 8 U.S.C. § 1252(a)(2)(B) ("Notwithstanding *any other provision of law* . . . no court shall have jurisdiction to review . . . (ii) any . . . decision or action of the Attorney General or the Secretary of [DHS] the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of [DHS]. . . ." (emphasis added)); *Safadi*, 466 F. Supp. 2d at 700 (explaining that "plaintiff's citation of sections 1331, 1361 and the APA do not serve to restore subject matter jurisdiction").